**In re Iverson O. MITCHELL, III, Debtor.**

**Bankruptcy No. 86–00007.**

United States Bankruptcy Court, District of Columbia.

Jan. 7, 1988.

Brian L. Dillard, Washington, D.C., for debtor.

Delores Murray, Washington, D.C., for movant.

## MEMORANDUM AND ORDER

GEORGE F. BASON, Jr., Bankruptcy Judge.

This matter came before the Court on the claim of Shadow Lawn Savings and Loan Association ("Shadow Lawn") and the objection thereto filed by the Debtor. In view of the absence of the Debtor's counsel at the time of the scheduled hearing, and there being no objection either by the Debtor (who was present) personally or by counsel for Shadow Lawn, the Court then made an oral ruling from the bench based upon the papers alone, without hearing oral argument from either side, subject to reconsideration on motion therefor within 10 days after entry of this Order. Following its oral ruling the Court has further reviewed the record of this case and has further reflected upon the matter and has accordingly revised its ruling to a limited extent.

Shadow Lawn filed a secured proof of claim on March 21, 1986 for the following amounts:

| | | |
|---|---:|---:|
| Principal | | $79,942.42 |
| Interest to 1/1/86 | 10,054.80 | |
| Escrow deficit | 1,748.89 | |
| Late charges | 585.74 | |
| Foreclosure costs | 3,064.74 | |
| Subtotal | 15,454.17 | 15,454.17 |
| Total claim | | 95,396.59 |

"with continuing interest etc., based on deed of trust."

In July 1986 Shadow Lawn filed a motion for relief from the automatic stay imposed by 11 U.S.C. Section 362(a) so that it could foreclose on the property subject to the deed of trust.[1] Paragraph 2 of that motion stated that "[the Debtor] is in default under the terms of the subject deed of trust in the amount of $95,396.50"; no reference was made in the motion to any claim for "continuing interest etc."

The Debtor filed an opposition to the motion, referring to a pending contract for sale of the property for $112,000—$2,000 more than the Debtor's estimate of fair market value as set forth in his Schedules

A–2 and B–1. In his opposition the Debtor noted that he had "applied his best efforts to preserve his and his mortgagor's interests in this improved realty by securing a contract at the market price . . .", whereas foreclosure would, "in all probability, effect a sale at a significantly lower price."

Nevertheless, by oral ruling from the bench on October 9, 1986 and formal Order entered on October 28, 1986, this Court granted the lift-stay motion, with a proviso "[t]hat this Order Lifting the Automatic Stay is stayed until November 1, 1986 so that the debtor . . . may complete settlement of a contract to sell" the realty. Settlement on the sales contract was held on October 29, 1986.

Immediately thereafter controversy arose between Shadow Lawn and the Debtor concerning disposition of the proceeds of settlement. Indeed, Shadow Lawn claimed an amount so large that a $3,096.03 deficiency in proceeds arose, which Shadow Lawn wanted the Debtor to pay. Shadow Lawn claimed $105,404.65; the Debtor objected to any amount more than $95,396.50, which he correctly pointed out was "the amount last identified by the secured creditor as the amount due and owing from Debtor." Following a hearing held on November 13, 1986 and by formal Orders dated November 13 and 14, 1986, this Court ordered payment to Shadow Lawn of the principal balance due to it, with the remaining proceeds of sale to be held in an interest-bearing escrow account pending the final determination or other resolution of Shadow Lawn's claim.

The settlement sheet reveals the following:

| | | |
|---|---:|---:|
| Contract sales price | | $112,000.00 |
| Plus, prepaid taxes | | 296.96 |
| Gross amount due to seller | | $112,296.96 |
| Less: | | |
| Settlement charges— | | |
| Broker's commission | 6,720.00 | |
| Loan discount (1%) | 1,064.00 | |
| Attorney fee to title co. | 75.00 | |
| Recording fee | 6.00 | |
| Transfer tax | 1,120.00 | |
| Pest inspection | 485.00 | |
| Trustee release fees & prep. | 50.00 | |

---

1. The subject property, located at 6421 13th Street, N.W., Washington, D.C., has been the Debtor's residence since October 1977.

|  | 9,520.00 | 9,500.00 |
|  |  | 102,776.96 |

| Less: |  |
| Clean-up escrow | 300.00 |
| Water bill | 67.34 |
| Water reading escrow | 101.00 |
|  | 468.34 | 468.34 |
|  |  | 102,308.62 |
| Amount claimed by Shadow Lawn | 105,404.65 |
| Deficiency | (− 3,096.03) |

■ Shadow Lawn contends that the Debtor should be responsible for the $3,096.03 deficiency. However, the deficiency obviously constitutes an unsecured claim, not a secured claim. 11 U.S.C. Section 506(a).[2] The Debtor received his Chapter 7 bankruptcy discharge on October 24, 1986, a few days prior to the settlement. That discharge released the Debtor from any responsibility to pay any amount to Shadow Lawn on account of its unsecured claim and indeed enjoined Shadow Lawn from attempting to collect its unsecured claim from the Debtor. 11 U.S.C. Section 524; Official Bankruptcy Form No. 27.

■ Section 502(b)(2) of the Bankruptcy Code "requires disallowance [of a claim] to the extent that the claim is for unmatured interest as of the date of the [bankruptcy] petition"[3]—here, January 7, 1986. An exception to this general rule is contained in Section 506(b), which permits post-petition interest and "any reasonable fees, costs, or charges provided for under the [security] agreement" *only* to extent that a claim is *over*secured—that is, to the extent that the net value of the property securing the claim "is greater than the amount of such claim." Thus, Shadow Lawn's claim to any deficiency must be disallowed. The maximum amount allowable to Shadow Lawn under Sections 502(b)(2) and 506(b) is the net sales price after deduction of all expenses of sale—*i.e.*, $102,308.62 plus any

unused portion of the $300 clean-up escrow and the $101 water reading escrow.

■ The Debtor objects to Shadow Lawn's claim to the extent it exceeds $95,396.50 on the ground that in its lift-stay motion Shadow Lawn identified that amount as the amount due and owing. However, in view of the notation on Shadow Lawn's proof of claim that "continuing interest etc., based on deed of trust" is also claimed, this Court is not persuaded that the later reference solely to the $95,396.50 figure in the lift-stay motion should be construed as a waiver of any amount above that figure. The proof of claim itself is ordinarily the governing document as to the amount being claimed; the lift-stay motion did not purport to include a modification to the proof of claim. Nor, in the absence of any evidence of detrimental reliance, can this Court conclude that Shadow Lawn is estopped to claim more than $95,396.50.

However, the burden is on Shadow Lawn to establish the amount of post-petition interest to which it is entitled, as well as the reasonableness of any post-petition "fees, costs, or charges" that it claims and that are provided for under the deed of trust.[4] The Court has computed and can take judicial notice of the interest on the $79,942.42 principal balance at the contract rate of 8.5% from January 1, 1986 (the date to which interest was computed in Shadow Lawn's proof of claim) through November 14, 1986, (the date of this Court's second Order directing payment of the $79,942.42 to Shadow Lawn, which the Court takes to be the date of actual payment in the absence of any contrary evidence). That interest amount is $5,920.12.[5] The sum of

2. Section 506(a) provides in essence that a claim is a secured claim *only* "to the extent of the value of . . . the property" at most. Any balance "is an unsecured claim." Here, the property was sold at a price even higher than the Debtor's estimate of value, and hence there can be no question that the balance of Shadow Lawn's claim above the net sales proceeds is truly "unsecured."

3. S.Rep. No. 95–989 (1978), p. 62, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5848.

4. 3 *Collier on Bankruptcy* (15th ed.), pp. 506–49/506–50: "The bankruptcy Courts will generally require the party seeking allowance of attorneys' fees to carry the burden of demonstrating reasonableness by providing a detailed description of the services rendered, supporting documentation or other evidence prior to making a determination thereon."

5. ($79,942.42 × 8.5%) × 318 days/365 days.

the $5,920.12 post-petition interest plus the $95,396.59 pre-petition principal, interest and costs is $101,316.71.

The Court can also take judicial notice of the provisions in the deed of trust for a 4% late charge and for monthly payments of $657.50 due on the first day of each month, with a 15–day grace period.[6] Seven months elapsed between the filing of the proof of claim on March 21, 1986 and the presumed date of payment on November 14, 1986. Therefore, late charges totaling $184.10 may be added to the $101,316.71 figure, for a grand total of $101,500.81.

Shadow Lawn has failed to provide any itemization or explanation of its claim for the $3,903.84 difference between this $101,-300.81 and the total of $105,404.65 which it demanded at the time of settlement, nor indeed for the $10,008.06 difference between the $95,396.59 claimed in its proof of claim and the $105,404.65 demanded at settlement. In the absence of either itemization or explanation, this Court will not speculate as to whether any part of that $3,903.84 represents a reasonable fee, cost or charge that could, if proved to the satisfaction of the Court, be recoverable by Shadow Lawn. The Court's review of the record of this case convinces it that an attorney fee for the entire $3,903.84 would be grossly excessive.[7]

**6.** The Court will not speculate as to what amounts in addition to the $657.50 would be payable each month from April through October 1986 for taxes, insurance, or other items.

**7.** Shadow Lawn's counsel (i) filled out (or at least signed) the one-page printed proof-of-claim form; (ii) prepared, served and filed a typewritten, double-spaced, one-and-one-half page "motion to lift automatic stay"; (iii) appeared in court for the hearing on the lift-stay motion; (iv) appeared at a hearing on the Debtor's motion to confirm realty sale and (v) a hearing on the Debtor's objection to Shadow Lawn's claim, and also (vi) drafted and submitted a proposed form of order purportedly in compliance with this Court's bench ruling at the last hearing. In this Court's view only the first three of these items would be compensable even if a detailed description supported by time records had been submitted. Item (iv) would not have been necessary absent Shadow Lawn's effort to collect an unsecured, deficiency claim from the Debtor in violation of this Court's injunction contained in the Order of Discharge of the Debtor; Shadow Lawn did not substantially prevail at the

■ Thus, in conclusion, Shadow Lawn's claim is allowed in the total amount of $101,500.81, broken down as follows:

| | | |
|---|---:|---:|
| Principal | | 79,942.42 |
| Pre-petition interest (to 1/1/86) | 10,054.80 | |
| Escrow deficit | 1,748.89 | |
| Late charges | 585.74 | |
| Foreclosure costs | 3,064.74 | |
| Subtotal | 15,454.17 | 15,454.17 |
| Total claim as itemized on proof of claim | | 95,396.59 |
| Plus: Interest from 1/1/86 to 11/14/86 | | 5,920.12 |
| Late charges | | 184.10 |
| Total allowable claim | | $101,500.81 |
| Less, amount already received | | 79,942.42 |
| Amount now payable to Shadow Lawn | | $ 21,558.39 |

After payment of the $21,558.39 that is now due to Shadow Lawn, all remaining amounts in the escrow fund, including interest earned by that fund, are payable to the Debtor,[8] pursuant to his claim of the $7,500.00 homestead exemption to which he is entitled under 11 U.S.C. Section 522(d)(1).

NOW THEREFORE IT IS ORDERED that the Debtor's objection to Shadow Lawn's claim is sustained in part; Shadow Lawn's claim is allowed to the extent of $101,500.81, of which $79,942.42 has been paid, leaving a balance now due of $21,-558.39, which shall be paid to Shadow Lawn eleven days after entry of this Order; Shadow Lawn's claim is disallowed to the extent it exceeds $101,500.81; and all sums

hearing on item (v); and, as to item (vi), this Court has discovered that, regrettably, the proposed form of order submitted by Shadow Lawn's counsel included language (concerning interest on the escrowed funds) favorable to Shadow Lawn which was not included in this Court's oral ruling and which is not in accordance with law.

**8.** Having been paid the full amount of its principal on November 14, 1986, Shadow Lawn is not entitled to any further accrual of interest beyond that date. Specifically, Shadow Lawn is not entitled to interest earned by the escrowed fund. The provision in paragraph 11 of the deed of trust for interest on "reasonable attorney's fees and charges" and other costs of suit is not repeated with respect to those items other than principal that are involved in this case— i.e., interest, late charges, escrow deficit or foreclosure costs. *Cf. In re Chicago, Milwaukee St. Paul & Pac. R.,* 791 F.2d 524 (7th Cir.1986), disallowing "interest on interest."

remaining in the escrow fund above the $21,558.39 that is payable to Shadow Lawn shall be paid over to the Debtor eleven days after entry of this Order;

PROVIDED: This Order is subject to reconsideration on motion therefor by either party filed within 10 days after entry of this Order.